Steven D. Park (SBN 215219)
    *spark@parklawless.com*
Vincent Tremonti (SBN 301571)
    *vtremonti@parklawless.com*
**PARK LAWLESS & TREMONTI LLP**
515 S. Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone:   (213) 640-3770
Facsimile:   (213) 640-3015

Attorneys for Defendant
BNSF RAILWAY COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY, | CASE NO. 2:25-cv-02130-MRA-RAOx |
| Plaintiff, | **THIRD-PARTY DEFENDANT, BNSF RAILWAY COMPANY'S NOTICE OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| v. | |
| EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.; COSCO SHIPPING LINES CO., LTD.; COSCO SHIPPING LINES (NORTH AMERICA) INC., and DOES ONE through TEN, | Hearing Date: February 3, 2026 |
| | Hearing Time: 10:00 AM |
| | Location: Courtroom 9B |
| Defendants. | Complaint Filed: Mar. 11, 2025 |
| | Trial Date: N/A |
| EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., | |
| Crossclaimant, | |
| v. | |
| COSCO SHIPPING LINES CO., LTD., | |

1

Cross defendant,
COSCO SHIPPING LINES CO., LTD.;
COSCO SHIPPING LINES (NORTH AMERICA) INC.,

Third-Party Plaintiffs,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, BNSF RAILWAY COMPANY,

Third-Party Defendants.

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 3, 2026 or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Mónica Ramírez Almadani, at Ronald Reagan Federal Building and United States Courthouse, Santa Ana, California. Defendant BNSF Railway Company, by and through its undersigned counsel, will and hereby does move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6).

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) upon the grounds that third-party plaintiffs have failed to state claims upon which relief can be granted because, among other reasons, the third-party plaintiffs assert nothing more than a claim for freight loss and damage. As such, third-party defendant BNSF Railway Company respectfully requests that third-party plaintiffs Cosco Shipping Lines Co., LTD and Cosco Shipping Lines (North America) Inc. (collectively "CSL") claims be dismissed from this lawsuit with prejudice.

This motion is made following the conference of counsel pursuant to L.R.7-3. On December 15, 2025, counsel for BNSF sent counsel for CSL a correspondence

providing them with notice of BNSF's potential motion, which included a thorough summary (with legal citations) of the arguments BNSF would likely assert. Among the citations included several recent Central District of California decisions regarding the precise issues presented in BNSF's motion. On December 22, 2025, counsel conducted a video conference to discuss the substance and potential resolution of the motion and were unable to resolve the dispute.

**PARK LAWLESS & TREMONTI, LLP**

_/s/ Steven D. Park_
Steven D. Park
Vincent Tremonti
_Attorneys for Defendant_
_BNSF Railway Company_

Dated: December 29, 2025

3

Third-Party Defendant BNSF Railway Company's Motion to Dismiss

# Table of Contents

I.      Introduction ...................................................................................................1

II.     Statement of Facts ........................................................................................1

        A.     Allegations from pleadings. ...............................................................1

        B.     Applicable terms of transportation....................................................3

               1.     BNSF's Intermodal Rules...........................................................3

               2.     CSL's limitation of liability terms and conditions ......................4

III.    Legal Standard...............................................................................................5

IV.     Legal Argument.............................................................................................5

        A.     The Court should consider the Intermodal Rules when assessing
               the sufficiency of CSL's third-party complaint. ..................................6

        B.     CSL has failed to assert a plausible claim because it has not
               alleged compliance with BNSF's pre-suit claim filing
               requirements..........................................................................................7

        C.     COGSA preempts CSL's non-contractual tort claims..........................11

V.      Conclusion....................................................................................................14

Table of Authorities

<u>Cases</u>

*Adams Express Co. v. Croninger,*
226 U.S. 491 (1913) ...................................................................................... 7

*Ashcroft v. Iqbal,*
566 U.S. 662 (2009) ................................................................................. 5, 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................. 5, 10

*Boomer v. AT&T Corp.,*
309 F.3d 404 (7th Cir. 2002) ......................................................................... 11

*CMA CGM, S.A. v. BNSF Ry. Co.,*
No. CV 24-3369 PA (MARX), 2024 WL 5341195
(C.D. Cal. Dec. 12, 2024) ...................................................................... 6, 9, 10

*CNA Ins. Co. v. Hyundai Merch. Marine Co.,*
747 F.3d 339 (6th Cir. 2014) ........................................................................... 8

*Cont'l Ins. Co. v. Kawasaki Kisen Kaisha, Ltd.,*
542 F. Supp. 2d 1031 (N.D. Cal. 2008) ...................................................... 11, 12

*Edwards v. CSX Transp. Inc.,*
983 F.3d 112 (4th Cir. 2020) .......................................................................... 11

*Fed. Ins. Co. v. Union Pac. R. Co.,*
651 F.3d 1175 (9th Cir. 2011) ................................................................... 13, 14

*Fireman's Fund Ins. Co. v. Crowley Liner Servs., Inc,*
No. CIV. 08-1745 PG, 2011 WL 3651804 (D.P.R. Aug. 17, 2011) ................. 12

*Great N. R. Co. v. O'Connor,*
232 U.S. 508 (1914) ........................................................................................ 8

*Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.,*
471 U.S. 707 (1985) ...................................................................................... 11

*Indust. Mar. Carriers (Bahamas), Inc. v. Siemens Westinghouse Power Corp.,*
67 F. App'x 252 (5th Cir. 2003) ...................................................................... 8

*John Bee Corp. v. CFR Rinkens LLC,,*
No. CV1210407FMOAJWX, 2013 WL 12439444
(C.D. Cal. Aug. 6, 2013) ............................................................................... 12

*JP Hyan v. Liberty Surplus Ins. Corp.,*
No. CV 14-2004 GAF (FFMx), 2014 WL 12573681
(C.D. Cal. Sept. 24, 2014) ............................................................................. 10

*Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.,*
561 U.S. 89 (2010) .............................................................................. 11, 12, 13

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 998 (9th Cir. 2018)..................................................................................6

*La. Pub. Serv. Comm'n v. FCC*,
  476 U.S. 355 (1986) ...............................................................................................11

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)..................................................................................6

*Maynard v. CSX Transp., Inc.*,
  360 F. Supp. 2d 836 (E.D. Ky. 2004)....................................................................11

*MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*,
  735 F. Supp. 3d 1203 (C.D. Cal. 2024)...............................................................6, 9

*MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*,
  769 F. Supp. 3d 547 (N.D. Tex. 2025).................................................................7, 10

*MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*,
  779 F. Supp. 3d 1083 (C.D. Cal. 2025).......................................................6, 8, 10, 11

*MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*,
  No. 24-3957, 2025 WL 1924903 (9th Cir. July 14, 2025).................................7, 9

*Norfolk S. Ry. Co. v. Kirby*,
  543 U.S. 14 (2004).......................................................................5, 8, 13, 14

*Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd.*,
  215 F.3d 1217 (11th Cir. 2000)..............................................................................12

*Royal & Sun All. Ins., PLC v. Ocean World Lines, Inc.*,
  612 F.3d 138 (2d Cir. 2010)...................................................................................13

*Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*,
  291 F.3d 145 (2d Cir. 2002)...................................................................................13

*Shelter Forest Int'l Acquisition, Inc. v. COSCO Shipping (USA) Inc.*,
  475 F. Supp. 3d 1171 (D. Or. 2020).......................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...............................................................................................6

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003)..................................................................................6

*Underwood, Cotton Co., Inc. v. Hyundai Merch. Marine (Am.), Inc.*,
  288 F.3d 405 (9th Cir. 2002)..................................................................................12

Statutes

46 U.S.C. § 30701..........................................................................................................11

Other Authorities

*Admiralty and Maritime Law,* Federal Judicial Center (2004) ...............................12

iii

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

Michael E. Crowley, *The Limited Scope of the Cargo Liability Regime Covering Carriage of Goods by Sea: The Multimodal Problem,* 79 Tul. L.Rev. 1461 (2005) ...................................................................................................... 12

T. Schoenbaum, Admiralty Law (4th ed. 2006)......................................................... 13

<u>Rules</u>

Fed. R. Civ. P. 12.................................................................................. 1, 5, 6, 10

<u>Constitutional Provisions</u>

U.S. Const. art. VI ........................................................................................ 11

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

Defendant, BNSF Railway Company ("BNSF") respectfully moves for an Order dismissing the third-party complaint in its entirety for failure to plead compliance with BNSF's pre-suit claim requirements, or in the alternative, to dismiss Third-Party Plaintiffs Cosco Shipping Lines Co., LTD and Cosco Shipping Lines (North America) Inc. (collectively "CSL") improper tort and declaratory relief claims, pursuant to Fed. R. Civ. P. 12(b)(6) and LCR 7.

## I.  INTRODUCTION

CSL is a highly-sophisticated ocean common carrier whose claims against BNSF are not about who lost the cargo, but whether it can enforce the contractual and statutory rules governing cargo loss to which it agreed and which served as the basis for the shipment of the cargo. CSL's third-party complaint fails as a matter of law. The transportation contract CSL invoked incorporates BNSF's Intermodal Rules, which impose mandatory pre-suit claim requirements that CSL does not allege it satisfied. In addition, federal maritime law—specifically the Carriage of Goods by Sea Act ("COGSA")—provides the exclusive liability regime for cargo loss during an international through-shipment and preempts CSL's non-contractual tort claims. Because CSL neither pleads compliance with the governing contractual claims process nor states a viable claim outside COGSA's exclusive framework, the Court should dismiss its third-party complaint.

## II.  STATEMENT OF FACTS

### A.    Allegations from pleadings.

The original action is to recover cargo loss and damage. *See* Doc. 1 at ¶ 5. Plaintiff, Continental Insurance Company ("Continental"), alleges that it issued an insurance policy to a cargo owner to indemnify it against loss or damage of its cargo (remote-controlled toy vehicles and related parts) while in transit. *Id.* at ¶¶ 1, 6, and 8. Continental alleges that on February 17, 2024, Defendants, Expeditors International of Washington, Inc. ("Expeditors") and COSCO Expeditors Taiwan Co., Ltd., issued

a through-sea waybill, number COSU6375595690 ("CSL's Bill"), to transport the cargo from Taiwan to Dallas, Texas via the Port of Long Beach, California. *Id.* at ¶ 6. The cargo was loaded into three shipping containers, CSNU6127883, TGBU8815010, and FFAU2545065, and CSL, a vessel-operating ocean common carrier ("VOCC"), transported the containers from Taiwan to the Port of Long Beach, California. *See* Doc. 30 at ¶¶ 4, 7 and 10; *see also* Exhibit A (CSL's Bill). CSL then contracted with BNSF Railway Company ("BNSF"), an interstate rail common carrier that transports freight for its customers, to transport the containers from the Port of Long Beach to an inland destination. *See* Doc. 30 at ¶¶ 6, 10–11.[1]

Continental alleges that Defendants (Expeditors and CSL) breached their agreement because they failed to deliver the cargo in the same condition and quantity as when tendered—*i.e.*, certain cargo was lost or missing. *See* Doc. 1 at ¶ 7. Due to the cargo loss, Continental reimbursed the cargo owner for the value of the missing goods and the related expenses in accordance with the insurance policy. *Id.* at 8. On March 11, 2025, Continental filed this lawsuit against Defendants seeking to recover its payment to the cargo owner for the cargo loss. *See generally, id.*

More than seven months later, on October 20, 2025, CSL filed a third-party complaint against BNSF contending that the loss or damage to cargo occurred while it is was in BNSF's care, custody, and control. Doc. 30 at ¶ 8. CSL denies that it is liable to Continental, but if it is found liable, that its liability is a direct or proximate result of BNSF's actions and BNSF should indemnify. *See generally*, *id.* at ¶¶ 13–14, 16–17, 20–21, and 24–25. CSL asserts various causes of action again BNSF,

---

[1] Although not alleged in any pleading, and offered solely to provide the Court with additional context, CSL tendered the containers to BNSF on or about March 3, 2024. BNSF transported the containers from Long Beach, California, and delivered them on or about March 9, 2024, in Alliance, Texas. Thereafter, a trucking company—presumably retained by CSL or Expeditors—picked up the containers to continue their journey to their ultimate destination in Dallas, Texas.

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

including breach of contract, negligence, bailment, and breach of common carrier duty.[2]

### B. Applicable terms of transportation.

#### 1. BNSF's Intermodal Rules

BNSF and CSL have maintained a long-standing contractual relationship. CSL alleges that it "contracted with BNSF [] to provide intermodal rail transportation services for [the] cargo" at issue in this litigation. *See* Doc. 30 at ¶ 10. CSL concludes, without providing any detail about the contract terms, or pleading any facts describing its performance, that it "has performed all obligations under said contract which it [was] required to perform." *Id.* at ¶ 12. The "contract" is an International Transportation Contract, MA111 ("ITC"), where BNSF agreed to provide CSL with transportation services between designated locations at preferred rates, which are determined based on the private price authority that BNSF offered CSL. Pursuant to the ITC, and the private price authority, the parties agreed that BNSF's Intermodal Rules and Policies Guide ("Intermodal Rules") would govern BNSF's services——including its loss-and-damage provisions.[3]

---

[2] CSL also raises two "affirmative defenses;" contribution and declaratory relief. *See* Doc. 30 at ¶¶ 26–30. It is unclear if CSL mislabeled these claims as "affirmative defenses."

[3] The ITC and private price authority are confidential because they contain sensitive business terms between the parties. Through the parties' meet-and-confer process under L.R. 7-3, however, BNSF understands there is no dispute that the ITC is the governing contract referenced in CSL's pleading and that it expressly references the price authority and incorporates BNSF's applicable Intermodal Rules. Accordingly, and because the remaining provisions of the ITC and price authority are not relevant to this motion, BNSF has not attached either document. Should CSL nonetheless dispute the applicability of the ITC, price authority, and/or the Intermodal Rules in opposing this motion, BNSF will seek leave to file the ITC and price authority under seal. The Intermodal Rules themselves, which are relevant here, are not confidential.

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

The Intermodal Rules at Item 28 provide BNSF's liability for cargo loss and damage and promulgate a two-step claim process to recover cargo loss and damage. *See* Exhibit B at 38–42. "Only the Shipper (the party indicated on the BNSF private price authority and paying BNSF for the rail transportation [i.e., CSL]) may initiate and maintain a claim for cargo loss and damage or a suit against BNSF." *Id.* at 40 (emphasis added). The first step requires the Shipper to submit a written claim with BNSF within nine-months after the cargo is delivered. *Id.* at 41, ¶ 2 ("Filing Claims Time Limit"). Submission of a timely written claim is a "prerequisite before the Shipper can bring a suit for loss or damage against BNSF." *Id.* at 42, ¶ 5 ("Lawsuit Filing Time Limit") ("emphasis added). Second, if BNSF denies the claim, the Shipper must file a suit against BNSF within nine months of the denial. *Id.*

Further, the Intermodal Rules provide that if the "shipment moves under the terms of a through bill of lading issued by another carrier, such as a [] ocean carrier, that has limited liability terms, [] the cargo liability of BNSF will be no greater than the limitation of liability as stated on that bill of lading." *Id.* at 39 (Cargo Loss and Damage Liability).

### 2.    CSL's limitation of liability terms and conditions

The cargo moved continuously under CSL's Bill from international origin (Taiwan) through the Port of Long Beach to its inland destination (Dallas, Texas). Doc. 1 at ¶ 6; Ex. A. CSL's Bill incorporates its Terms and Conditions, which appear on the reverse side of its sea waybill and are published on CSL's website. *See* Ex. A ("The merchants agree to be bound by the terms and conditions of this Sea Waybill … [t]he complete TERMS AND CONDITIONS appearing on the reverse side of this Bill of Lading are available at [CSL's website]."). The Terms and Conditions expressly incorporate the Carriage of Goods by Sea Act ("COGSA") throughout the entire transport, including prior to the cargo loaded "on the vessel at the port of loading and following discharge from the vessel at the port of discharge cargo, and throughout the time that the [cargo] are in [CSL's] possession, custody or control."

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

*See* Ex. C at 20, ¶ 27(2). CSL's subcontractors, including "rail transport operators" (like BNSF), "shall have the benefit of every exemption, defense and limitation herein contained applicable to [CSL], in contract or in tort, as if such provision were expressly contracted for its benefit …" *Id.* at 1 ("Subcontractor" definition) and 3, ¶ 4.[4]

## III. LEGAL STANDARD

Rule 12(b)(6) requires a court to dismiss a cause of action that fails to allege facts sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009). The court should accept all well-pleaded, nonconclusory factual allegations as true and construe them in the light most favorable to the plaintiff. *Id.* But this presumption does not extend to "legal conclusion[s] couched as . . . factual allegation[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. LEGAL ARGUMENT

CSL's third-party complaint fails as a matter of law for two independent reasons. First, the Court may properly consider BNSF's Intermodal Rules at the pleading stage because CSL's claims are expressly grounded in the parties' transportation contract, which incorporates those Rules and makes them applicable. The Intermodal Rules govern BNSF's liability for cargo loss or damage and impose mandatory pre-suit claim requirements that CSL does not allege it satisfied. Second, federal law forecloses CSL's attempt to repackage its cargo-loss claims as tort causes of action. COGSA applies to the through-shipment at issue as a matter of law and contract, which provides the exclusive liability regime for cargo loss or damage, and preempts all non-contractual tort claims. Because CSL fails to plead compliance with the governing contractual claims process and asserts non-contractual tort claims outside of COGSA's exclusive framework, the Court should dismiss its third-party

---

[4] Such as clause, which extends contractual liability limitations, is known as a "Himalaya Clause." *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 20 (2004).

complaint.

### A. The Court should consider the Intermodal Rules when assessing the sufficiency of CSL's third-party complaint.

While courts generally do not consider materials outside the pleading when ruling on a Rule 12(b)(6) motion, that limitation is subject to well-established exceptions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Courts may consider documents incorporated-by-reference into the pleadings, as well as matters subject to judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 998 (9th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting documents incorporated by reference and "matters of which a court may take judicial notice" are properly considered when ruling on a motion to dismiss).

"Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. A defendant may seek to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja*, 899 F.3d at 1002. Multiple courts within the Central District of California have applied the incorporation-by-reference doctrine to consider and apply BNSF's Intermodal Rules when adjudicating a shipper's claim seeking to recover cargo loss and damage. *See CMA CGM, S.A. v. BNSF Ry. Co.*, No. CV 24-3369 PA (MARX), 2024 WL 5341195, at *3 (C.D. Cal. Dec. 12, 2024) (appeal pending No. 25-292); *MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*, 779 F. Supp. 3d 1083, 1092 at n.3 (C.D. Cal. 2025); *MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*, 735 F. Supp. 3d 1203, 1207 (C.D. Cal. 2024), *aff'd*, No. 24-3957, 2025 WL 1924903 (9th

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

Cir. July 14, 2025).[5]

CSL's pleading expressly references the parties' contract and alleges that it has performed its contractual obligations in support of its breach-of-contract claim. Although that assertion is a legal conclusion that the Court need not accept on a Rule 12(b)(6) motion, *see infra* § IV.B, it nonetheless confirms CSL's intent to rely on the contract—specifically the ITC and the Intermodal Rules—as the foundation of its claims. Indeed, during the parties' Local Rule 7.3 conference, CSL did not dispute that the ITC governs the parties' relationship or that the ITC incorporates and makes applicable the Intermodal Rules.

Under these circumstances, the Court may properly apply the incorporation-by-reference doctrine to consider the Intermodal Rules in evaluating the sufficiency of the third-party complaint. The Intermodal Rules directly govern BNSF's liability and impose mandatory pre-suit claim requirements that a shipper, such as CSL, must satisfy as a condition precedent to suit. *See infra* § IV.B.

### B.    CSL has failed to assert a plausible claim because it has not alleged compliance with BNSF's pre-suit claim filing requirements.

For more than a century, courts have disapproved of attempts by shippers, like CSL, who accept the benefits of a transportation contract—including negotiated or preferential shipping rates—before later disavowing their contractual obligations when a loss occurs. *Great Northern R. Co. v. O'Connor*, 232 U.S. 508, 515 (1914) (terms of transportation are "binding upon the shipper and carrier alike, and are to be enforced by the courts in fixing the rights and liabilities of the parties."); *Adams Express Co. v. Croninger*, 226 U.S. 491, 510–11 (1913) ("[I]t would be unjust and

---

[5] The Northern District of Texas also considered and analyzed the Intermodal Rules when adjudicating a motion to transfer venue. *MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*, 769 F. Supp. 3d 547, 550 (N.D. Tex. 2025). CSL simply cannot avoid their application.

unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."); *see also Indust. Mar. Carriers (Bahamas), Inc. v. Siemens Westinghouse Power Corp.*, 67 F. App'x 252 (5th Cir. 2003) (same). When determining the respective rights and liabilities of the parties in a shipping dispute, courts look to the transportation contract that binds both the shipper and the carrier because the terms are inseparable from the rate and carriage. *Great N. R. Co. v. O'Connor*, 232 U.S. at 515; *CNA Ins. Co. v. Hyundai Merch. Marine Co.*, 747 F.3d 339, 371 (6th Cir. 2014) (enforcing contractual terms governing carrier liability). This framework reflects the well-established rule—premised on critical commercial policy—that ocean and rail common carriers may enter into "reliable and enforceable agreements" that define and limit their liability. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 33–34 (2004).

CSL seeks to impose liability on BNSF for alleged cargo loss and damage, asserting that it contracted with BNSF to transport cargo from the Port of Long Beach, California to an inland destination. CSL further alleges that the cargo was lost or damaged while in BNSF's custody and that BNSF failed to deliver the cargo in the condition in which it was tendered. Because CSL alleges the existence of a contract with BNSF, and because BNSF's Intermodal Rules constituted the governing terms and conditions of that transportation, those rules control the scope of BNSF's liability. CSL cannot rely on the contract to assert liability while simultaneously disregarding the contractual provisions that define and limit that liability. *See MSC Mediterranean Shipping Co. S.A.*, 779 F. Supp. 3d at 1096 (finding shipper cannot circumvent the limited liability provisions in the Intermodal Rules).

The Intermodal Rules establish a mandatory two-step cargo loss and damage claims process that BNSF's "shipper" must satisfy as a condition precedent to filing suit. CSL qualifies as the "shipper" because it contracted with BNSF and paid BNSF

8

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

to provide the transportation services at issue. First, CSL was required to submit a written cargo loss and damage claim to BNSF within nine months of BNSF's delivery of the shipment. Second, if BNSF denied the claim, CSL was required to file any lawsuit arising from that claim within nine months of the denial.

Compliance with the Intermodal Rules' pre-suit claims process is a ***prerequisite*** to filing a cargo loss or damage action against BNSF. *MSC Mediterranean Shipping Co. S.A.*, 735 F. Supp. 3d at 1207, *aff'd*, No. 24-3957, 2025 WL 1924903. In *MSC*, an ocean carrier, like CSL, subcontracted with BNSF for inland transportation and later sought indemnification and contribution after settling a cargo loss claim with the cargo owner's insurer. *Id.* at 1204–05. Like here, the ocean carrier's contract with BNSF incorporated the Intermodal Rules. *Id.* at 1205. Although the ocean carrier submitted a written claim to BNSF, it failed to file suit within nine months of BNSF's denial. *Id.*  The court dismissed the action as time-barred, holding that parties—especially "well-resourced and sophisticated ones"—are free to contract to allocate and limit risk and that the Intermodal Rules' time limitations apply to all claims "for cargo loss or damage," regardless of how they are styled. *Id.* at 1207. The Ninth Circuit affirmed, concluding that the ocean carrier's claims were untimely because it failed to file a lawsuit within nine months of BNSF's denial (i.e., failure to comply with the second prong of the pre-suit claim process). 2025 WL 1924903, at *2. Simply, whether CSL has a viable claim against BNSF hinges on its compliance with the pre-suit claim requirement.

Because CSL alleges no facts establishing compliance with the Intermodal Rules' mandatory pre-suit claims process, its third-party complaint necessarily fails to state a plausible claim. *See CMA CGM, S.A. v. BNSF Ry. Co.*, No. CV 24-3369 PA (MARX), 2024 WL 5341195, at *2 (C.D. Cal. Dec. 12, 2024) (appeal pending No. 25-292) (dismissing ocean carrier's claims for failure to plead compliance with Intermodal Rules). In *CMA CGM*, the ocean carrier—like CSL—alleged that it contracted with BNSF to transport cargo but failed to plead compliance with the

9

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

Intermodal Rules' pre-suit claims process. *Id.* at *1. BNSF moved to dismiss and the court agreed, holding that the Intermodal Rules limit BNSF's liability for cargo loss or damage and that failure to comply with the pre-suit process mandates dismissal. *Id.* at *2–4. In opposition, the carrier conceded noncompliance and submitted an improper declaration asserting that it did not discover the loss or damage until after the claims period had expired, while also seeking leave to amend. *Id.* at *4–5. The court denied leave, reasoning that the carrier's knowledge was irrelevant because the Intermodal Rules are intended to impose a firm claims bar and provide BNSF a definite period of repose. *Id.* The parties were sophisticated entities operating in international trade—where certainty and finality are paramount—and the court concluded there was "simply no reason [] to ignore a clear contractual claims bar among sophisticated, experienced parties." *Id.* at *5.

CSL's sole allegation that it "has performed all obligations" is a conclusory assertion that does not satisfy the *Twombly* and *Iqbal* standard and cannot survive a Rule 12(b)(6) motion. *See JP Hyan v. Liberty Surplus Ins. Corp.*, No. CV 14-2004 GAF (FFMx), 2014 WL 12573681, at *4 (C.D. Cal. Sept. 24, 2014). Having failed to plead facts that demonstrate compliance with the Intermodal Rules' pre-suit claim process, CSL's pleading is insufficient and the Court should dismiss.

CSL's failure is fatal to all its claims, not merely its breach-of-contract claim. Regardless of how CSL styles its causes of action, the Intermodal Rules govern—and limit—BNSF's liability for any claim seeking recovery for cargo loss or damage, and noncompliance with those terms requires dismissal. *See CMA CGM, S.A.*, 2024 WL 5341195, at *4 (holding that BNSF's rules apply to all cargo-loss claims, including indemnity); *MSC Mediterranean Shipping Co. S.A.*, 779 F. Supp. 3d at 1094 (explaining that claim labels such as indemnity, contribution, or breach of contract are "of no consequence"); *MSC Mediterranean Shipping Co. S.A.*, 769 F. Supp. 3d at 552 (rejecting attempts to avoid the Intermodal Rules through technical distinctions). CSL cannot circumvent the contractual liability limitations thorough pleading tort

10

claims. *See MSC Mediterranean Shipping Co. S.A.*, 779 F. Supp. 3d at 1094. The Court should dismiss CSL's third-party complaint in its entirety.

### C. COGSA preempts CSL's non-contractual tort claims

CSL's cargo loss and damage claim arises under federal law, which completely preempts its non-contractual tort claims. Federal preemption is rooted in the Supremacy Clause of the Constitution: "[T]he laws of the United States . . . shall be the supreme law of the land; . . . anything in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law…." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986). "Because federal law is the supreme law of the land, it preempts state laws that 'interfere with, or are contrary to, federal law.'" *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) *quoting Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985). Preempted claims are subject to threshold dismissal. *See, e.g., Edwards v. CSX Transp. Inc.,* 983 F.3d 112, 120 (4th Cir. 2020); *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 843 (E.D. Ky. 2004).

Congress enacted COGSA to regulate international trade to and from United States ports. Formerly codified at 46 U.S.C. § 1300 *et seq.*, COGSA is now set forth as a statutory note to 46 U.S.C. § 30701. COGSA "governs the terms of bills of lading issued by ocean carriers engaged in foreign trade," *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 98 (2010), and applies to "[e]very bill of lading or similar document which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." COGSA, introductory clause.

By default, COGSA imposes specific duties on carriers during the period known as "tackle-to-tackle"—that is, "from the time when the goods are loaded on to the time when they are discharged from the ship." *Cont'l Ins. Co. v. Kawasaki Kisen Kaisha, Ltd.*, 542 F. Supp. 2d 1031, 1034 (N.D. Cal. 2008) (quoting COGSA § 1(e)).

However, COGSA expressly permits the parties to utilize contract to extend its application to cover the entire period during which the goods are in the carrier's custody. COGSA § 7; *Regal-Beloit Corp.*, 561 U.S. at 98.

Under COGSA, if a shipper can produce a valid bill of lading and show that cargo was damaged, it has established a prima facie case of liability. *Cont'l Ins. Co.*, 542 F. Supp. 2d at 1034. The burden then shifts to the carrier to show that the damage resulted from a cause for which it is not liable (*i.e.,* a cause for which an immunity applies). *Id.* The shipper must assert claims for cargo damage within one year of delivery. *Id.; see also Admiralty and Maritime Law,* Federal Judicial Center, at 58–80 (2004); Michael E. Crowley, *The Limited Scope of the Cargo Liability Regime Covering Carriage of Goods by Sea: The Multimodal Problem,* 79 Tul. L.Rev. 1461 (2005).

When COGSA applies, it provides an exclusive remedy for the shipper and completely preempts any state law or common law claims. *See John Bee Corp. v. CFR Rinkens LLC,* No. CV1210407FMOAJWX, 2013 WL 12439444, at *3 (C.D. Cal. Aug. 6, 2013); *Cont'l Ins. Co.*, 542 F. Supp. 2d at 1034 (citing *Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd.*, 215 F.3d 1217, 1220 (11th Cir. 2000)); *Fireman's Fund Ins. Co. v. Crowley Liner Servs., Inc.*, No. CIV. 08-1745 PG, 2011 WL 3651804, at *7 (D.P.R. Aug. 17, 2011) (finding COGSA preempts negligence, gross negligence, recklessness, breach of contract, bailment or any other common law principles). "Stated differently, where the plaintiff's claim is made pursuant to a bill of lading, COGSA represents the plaintiff's exclusive remedy 'whether that claim is for failure to issue a proper bill of lading, or for damage to the goods, or loss thereof, or asserted improper discharge thereof, or misdelivery, or whatever.'" *Shelter Forest Int'l Acquisition, Inc. v. COSCO Shipping (USA) Inc.*, 475 F. Supp. 3d 1171, 1189 (D. Or. 2020) (quoting *Underwood, Cotton Co., Inc. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405, 410 (9th Cir. 2002)). This exclusivity promotes "uniformity in sea-carriage rules and allocating risk between shippers and carriers in a manner that is

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

consistent and predictable." *Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145, 148 (2d Cir. 2002).

COGSA applies to CSL's claims. CSL issued a sea waybill, CSL's Bill, governing the transportation of the cargo from a foreign port to an inland destination in the United States.[6] By operation of law, COGSA controls the terms of CSL's Bill. *See Regal-Beloit Corp.*, 561 U.S. at 98. COGSA also applies via contract because CSL's Terms and Conditions expressly incorporate COGSA throughout the entire transport, including the inland leg following discharge at the port, <u>and extend the benefit of COGSA and other defenses to CSL's subcontractors, including BNSF</u>. Ex. C at 3, ¶ 4 and 20, ¶ 27(2); *see Fed. Ins. Co. v. Union Pac. R. Co.*, 651 F.3d 1175, 1178 (9th Cir. 2011) (referring to a contract term that specifies the applicable legal regime as a "clause paramount."); *Kirby*, 543 U.S. at 36 (explaining that when a transportation contract extends the carrier's defenses to its subcontractors, such as inland rail carriers, those provisions are enforceable and allow the subcontractor to invoke the same protections).

CSL's tort claims to recover cargo loss and damage seek to blur these distinct liability regimes, evade the agreed-upon terms of transportation, and reimpose tort liability on downstream carriers such as BNSF notwithstanding the conditions of carriage to which CSL expressly agreed.

Subcontractors performing the inland rail leg of transportation under an upstream carrier's through bill of lading—like BNSF—are protected as third-party

---

[6] A sea waybill is like a bill of lading, except that bills of lading are negotiable, while waybills are not. *Royal & Sun All. Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 141 n.3 (2d Cir. 2010) (citing T. Schoenbaum, Admiralty Law § 10–11 (4th ed. 2006)) "A bill of lading is simply an acknowledgment by a carrier that it has received the goods for shipment. Second, it is a contract of carriage; third, if the bill is negotiated, it controls possession of the goods and is one of the indispensable documents in financing the movement of commodities and merchandise." *Id.*

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

beneficiaries through the contractual incorporation of COGSA. *Kirby*, 543 U.S. at 33, 36, *Fed. Ins. Co.*, 651 F.3d at 1179. It would be inconsistent with the beneficiary principle articulated in *Kirby* to preempt tort claims by the original shipper against an inland carrier, yet permit a preceding carrier such as CSL—acting as the shipper's agent and as a party to the subcontract—to resurrect those same tort claims against the subcontractor based on the identical cargo loss or damage. Accordingly, tort causes of action of the type CSL asserts here are preempted as to the entire through-shipment governed by CSL's Bill. CSL's sole avenue for relief lies in the conditions of carriage to which it agreed.

## V.   CONCLUSION

BNSF respectfully prays that this Court reject CSL's efforts to circumvent BNSF's incorporated Intermodal Rules and multiply its claims and rights to be greater than those contractually agreed upon between the parties. BNSF therefore requests that the Court entirely dismiss the third-party complaint for failure to plead compliance with BNSF's pre-suit claim requirements, or in the alternative, to dismiss CSL's tort and declaratory relief causes of action for failure to state of claim.

Dated: December 29, 2025

**PARK LAWLESS & TREMONTI LLP**

*/s/ Steven D. Park*
Steven D. Park, Esquire
Vincent Tremonti, Esquire
515 S. Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone: 213-640-3770
Email: spark@parklawless.com
          vtremonti@parklawless.com

*Attorneys for Defendant*
*BNSF Railway Company*

14

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss

Local Rule 11-6.2 Certificate of Compliance

The undersigned counsel of record for Defendant BNSF Railway Company certifies that this brief contains 4,663, which complies with the word limit of L.R. 11-6.1.

DATED:  December 29, 2025          /s/ Steven D. Park
                                 Steven D. Park
                                 Vincent Tremonti

                                 *Attorneys for Defendant*
                                 *BNSF Railway Company*

**CERTIFICATE OF SERVICE**

I, Steven D. Park, certify that on this 29th day of December, 2025, I caused a true and correct copy of the foregoing Defendant BNSF Railway Company's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) for Failure to State a Claim to be served upon all parties appearing of record, if any, via ECF Filing, or by their email address of record.

                                 /s/ Steven D. Park
                                 Steven D. Park
                                 Vincent Tremonti

                                 *Attorneys for Defendant*
                                 *BNSF Railway Company*

Third-Party Defendant BNSF Railway Company's Memorandum in Support of Motion to Dismiss